Geico v. Shackleford I should say Geico Marine Mr. Reiter. Yes. Yes, Your Honor. May it please the Court, good morning. My name is Jack Reiter. With me is Ted Schenkel. We represent Geico Marine. Your Honors, this case exemplifies the basis and necessity for the continued application of the Ubermae Fidei Doctrine. It's clear, which of course is the It seems to me that maybe the easier way to resolve this case is on the navigational limits. Do you disagree with that? No, Your Honor. I believe that the navigational warranty is as clear as can be. And I'm happy to turn to that first if the Court pleases. I would say It seems to me that navigational area is not a defined term. The exclusion refers back to the declarations page for the navigational area that's reflected on the declarations page. The declarations page refers to an area, right? And also refers to the vessel being while afloat, which is the same language that's used in the navigational area exclusion from coverage, right? Absolutely. And for that reason, that appeared to be reflected on the declarations page. I guess one question is, was there a waiver on the part of GEICO by agreeing that the vessel was going to be sent to a port in Florida very near where that navigational area restriction would have kicked in? You want to talk about that? Absolutely, Your Honor. I agree with everything Your Honor has identified. There is a clear, unambiguous, on the declarations page, navigational warranty. The notion that somehow GEICO Marine waived that, did a knowing and intentional waiver, because there was a specific removal of a port risk of shore endorsement and an authorization, an understanding to sail a boat five days before the navigational warranty was implicated, that cannot constitute a waiver of anything, Your Honor. Because by all rights, when Mr. Shackelford sailed the vessel to Fort Lauderdale, five days before the warranty was even implicated on June 1st, the understanding clearly could have been that he would have then repaired the vessel, put it on the back of a vehicle, and then driven it up north to where he maintained his home. Taken ashore. The vessel had been ashore before that port restriction was removed and the navigational area kicked back in, right? Exactly. Which was attached to the email sent to the insured, right? Absolutely. So that's absolutely right, Your Honor. There's nothing in this record to support any contention of a waiver. As I think it's quite clear, the fact that the boat was sailed before the warranty, the navigational, the cruising limits were implicated, in no way constitutes any sort of waiver. And quite frankly, I think as a matter of law, that was erroneous. And even if the court examined that from any sort of factual perspective, I believe with respect to the district judge that it's clearly erroneous. But I believe from a pure legal perspective, as a matter of law, the navigation warranty applied, it kicked in, it was effective June 1st, and an insurance company is— Let me make sure I understand something. So let's say within the five days, the vessels moved to Fort Lauderdale, right? Fort Lauderdale. That's where it was supposed to be headed. That's where it was represented to be sailed. You would agree, would you not, that if the vessel was then put in dry dock and was damaged by a hurricane, right? That it's not—that the coverage wouldn't be excluded at least because of the navigational limit. Completely different issue, Your Honor. Completely different issue. That's right. And Your Honor has, I believe— The problem was that the vessel was still in the water. That's correct. And that's where the— Five days later. Exactly. And that's where the damage occurred on the water in direct violation of a clear, unambiguous cruising limits that was set forth on the declarations page just as the policy indicated. Now, and I hope I've addressed all the Court's questions about the navigational limit. That's fine. My colleagues may have others. They may look at this case totally differently. Of course. Just one more on waiver. Where was the vessel when the coverage was expanded to permit it to be in the water so long as it was south of Cape Hatteras before June 1st? At the time, I believe it was in Cortez or—I believe it was in Cortez. Somewhere on the west coast. Yes. And it was going to be sailed from Cortez. And what, if anything, do we know about how easy or hard it would have been to get the vessel from there to Fort Lauderdale in the five days? Well, we know—we understand—well, the record is not clear on that, Your Honor. There's nothing in the record that speaks to how long it took to get to Fort Lauderdale within that period. But there's nothing that suggests that it could not have been brought there and then sailed and then taken out. I mean, is there anything—I don't know. I don't know anything about sailing. If I knew about sailing, would it be either very obvious that that was doable or very obvious that it was not doable? Your Honor, from the west coast of Florida to the east coast of Florida and around, one could sail that in a very short period of time. I mean, this is not a lengthy— Less than five days. Absolutely, Your Honor. Absolutely. And I will, though—again, I do want to hearken back to the Huberme Fidei Doctrine. Hearing the court's point, I will agree completely that the navigational warranty is an absolute basis for reversing the district court's erroneous decision. Having said that— And if so, if we agree with you about that, there's no need to reach any other issue. That's absolutely correct, Your Honor. These are presented in the alternative. But I would be remiss if I didn't at least— I understand. —discuss another point that I believe is also very strong and also warrants reversal. I would respectfully submit that both of these are extremely strong. I agree with Your Honor's point that the navigational warranty is clear, precise, was implicated, and therefore stands as an independent basis for reversing and remanding and finding no coverage existed. That said, I would also highlight the fact that we have here a series of omissions that were made by Mr. Shackelford at the time not only when he first applied for insurance but through the course of several days and weeks as he expanded the scope of coverage. And I believe, Your Honors, that again— Is there a requirement of inducement here? In what regard, Your Honor? With respect to the doctrine. No, Your Honor, there is not. Why not? Well, because—well, let me make clear that I'm answering Your Honor's question correctly. I would say that there's no inducement, if I understand Your Honor's correction, in the sense of reliance. In other words, the Uberma-Fidei doctrine requires that an insured or putative insured voluntarily disclose any material facts that may implicate the insurance decision. And I do not believe that Uberma-Fidei requires there to be an inducement on that. However, I could see a point being made that because it has to be material, that the concept of materiality could be deemed to be a form of inducement. Having said that, Your Honor, I believe that here the answer to the question is still the same because the evidence made clear that there was reliance. Let's—can we try—let me try it this way before you get to reliance. Yes, Your Honor. Suppose we think there are some set of facts that are—would have been really important to a reasonable insurer, but that Geico knew or Geico was charged with knowledge under fact-finding that you haven't challenged and were bound to accept. So really important facts, but the company already knew them. Is failure to disclose those facts under that circumstance, does that violate the doctrine of utmost good faith? I would submit, Your Honor, that there is a little bit of a gray area with respect to whether or not the carrier is aware of the facts. I'm talking about hypothetically here. But I—and I understand now the court's question to being if the insurer is fully aware of all of the facts, does that undermine or obviate the application of Uberma-Fidei? In the HIH case out of this court, the court talked about—this court talked about the fact that there was knowledge of certain underlying factors. That was the charter vessel, if I'm remembering the name correctly. And this court observed that there were certain factors that were known to the marine insurer, but still found the Uberma-Fidei doctrine applied. But I think here it's important, if I may say so, to highlight the fact we accept findings of fact here because we're not challenging certain findings. I say certain findings, but I do want to make some points extremely specifically. The district judge concluded that Geico Marine had implied knowledge of the fact that the vessel that Mr. Shackelford had received $250,000 for 18 months earlier had been a constructive total loss. But there is no evidence in the record. In fact, the evidence is to the contrary, that Geico Marine had no knowledge at the time it issued the policy that Mr. Shackelford had not repaired the vessel. And, in fact, when asked at trial, Mr. Shackelford was asked—and I know I'm going to go into my rebuttal time a little bit, if I may. I see that—I believe that that's— That's what you want to do. If I may. Yes, thank you. When Mr. Shackelford was asked specifically, did you ever tell Geico that you hadn't repaired the vessel, his response to that was, quote, they never asked that question, unquote. That, I would submit, is a clear violation of the doctrine. Both—not only is it clear, but it highlights the reason why, even if we accept it's true— Except that Geico knew everything the district court said Geico knew. There was still other material, further facts that weren't disclosed. Exactly. That's your point. Exactly. Like the fact that the vessel had not been repaired. The fact that, literally, the same day that the port risk ashore endorsement was prepared, Steve Berlin, a marine surveyor, prepared a marine survey identifying the value of the vessel. I got it. Right. Yes. And so, there were multiple facts, Your Honor. And, again, I'll point out, Your Honors are obviously very familiar with the record, but days before, days before Mr. Shackelford applied for insurance, he signed sworn answers to interrogatories in a separate case against the docking company, the boat docking company, assessing the value of the vessel at $50,000. Mr. Ryder, you've taken a minute of your rebuttal time. You can keep four. Thank you, Your Honors. Okay. I'll reserve the rest of my time for rebuttal unless there's any questions about— You'll have four minutes for rebuttal. Yes, Your Honor. Thank you. Mr. Berman. May it please the Court, Craig Berman. I represent Mr. Shackelford. The navigational warranty is governed by State law because of the conformity clause. But even if you, Your Honors, don't consider that, there was a factual issue as to waiver. Mr. Shackelford said, and the transcript bears it out, that he was going to Fort Lauderdale for, quote, extensive repairs. Extensive repairs. Okay. He left May 28th. Right. There's no way the boat would have been fixed by June 1st, and there's no way he would have— It doesn't have to be fixed. It could be put in dry dock. That's what the intent was. When you go to— I know. That's the whole point. And if it's put in dry dock, guess what? This navigational warranty isn't implicated. I don't see how that supports your argument for waiver. If the expectation is that the document needs to be moved from the west coast of Florida to the east coast in the time before June 1st, and then it's going to be put in dry dock, therefore won't be afloat, I don't see how that suggests waiver. How that could even lead to a finding of waiver. Because the underwriters all knew where the boat was going. They knew it was going to a dry dock. But if Geico Marine had exercised Uberame Fidei, because it's a reciprocal obligation— We're not talking about Uberame Fidei. We're talking about the navigational warranty. Right. But you cannot lead your policyholder to think you've got coverage when you're secretly— You do have coverage if you put it in dry dock. There was no proof that he wasn't going to put it in dry dock. That doesn't matter. The fact is it wasn't put in dry dock. And when the damage occurs, it's in the water. Isn't that right? He was trying to get it there. And what happened was his mast was too tall for the wires leading to Lauderdale Marine Center. So he had to bring it to a different place. Eventually, once there was an issue, then he brought it to— Here's the thing. Here's the thing. If we're to say that Geico somehow waived the navigational limit, I don't see how anything you're saying supports that. If their expectation was that it was going to be put in dry dock, and you're telling me all the reasons it didn't happen, but that was the intent, was to put it in dry dock, that actually, it seems to me, supports their argument, doesn't hurt their argument. What am I missing? He left on May 28th, and the boat was at Fort Lauderdale around June 1st. Time to haul it ashore. He didn't have a chance because of the water coming on. He didn't have a chance. He didn't have a chance because of his mast. If Geico had said— Yes, but see, if the point is that Geico somehow waived the right to rely on the navigational limit about something they said or did, I'm having a hard time understanding what that thing they said or did was that shows that. The emails he sent and the conversation he had all said, it's going for extensive repairs. Going for extensive repairs. Can you remove the port risk ashore restriction? Right. There's still time before June 1st. But to have extensive repairs? No, to get it to Fort Lauderdale, to get it out of the water. Right, but they didn't ask him— Get it out of the water for extensive repairs. The navigational limit only applies when it's in water. I agree. The problem is it's in water when your vessel is damaged. If he has an issue while getting it to dry dock, he doesn't have a chance to get there. This is just like the case Anzella Explorer, the Southern District. Comprehensive opinion says you have to factor in the purpose and intent of the voyage to decide if a navigational warranty has been breached. And in this case— When was the accident? It's mid-June, right? The record says mid-June, but that's when it was reported to GEICO. It was actually earlier. Go. The reality is they knew where the boat was going. If they had told him it better be out of the water before June 1st, he would have gone to a different insurance company and said, hey, I'm going to this place. Didn't they effectively tell him that? They sent him an email with the declarations page attached that had the navigational limit on it. They did send it to an email, but he didn't check it. And the endorsement— That's not their fault. Judge Whittemore said there was an ambiguity because although the endorsement says nothing, unless it's in this box, it doesn't change anything. In order for a policyholder to change a navigational warranty, one must be printed. Like, you can change your phone number. You can change your email address. But, I mean, we're talking about waiver, right? We're talking— Just assume we think there is a navigational warranty. I mean, the hard part of your waiver argument is that you say the act that gives rise to the waiver is the extension of this new coverage, which is the precise act that imposes the navigational limit. So that's a tough argument for you. And, I mean, the only way it works, the only way it could work, is if there's just no conceivable way that he could comply with that limit.  If he left on May 28th, he could not have reached Cape Hatteras by June 1st. No, but could he have reached Fort Lauderdale by June 1st? He did. He did. Okay, so— He did, and the intent was to take it to a place called Lauderdale Marine Center. Yes. And— So you can't—the point is you can't draw an inference from the practical constraints he was under. He says to the company, I need to get to Fort Lauderdale by June 1st, and they issue this coverage with the navigational limit. I mean, you can't draw an inference from his practical constraints, because you just told me he could get to Fort Lauderdale by June 1st. And did. And did. But what happens if he finds out his boat won't get under a wire? Maybe he could have called GEICO. That doesn't show anything on the part of GEICO about waiver. For all GEICO knows, your client has it all arranged. Everybody knows the vessel's coming, and they're prepared, and there's going to be no problem getting it in dry dock. I'm sure if he had called, they would have said, no problem, we'll work with you. That's why this harsh doctrine of waiver that Admiralty law abhors is taken care of by the conformity clause, which says any terms of this policy that conflict with state law are amended to conform to state law. And under the Florida scheme, a breach of a warranty is not a defense unless the breach brought about the loss. And we've outlined that extensively in our brief. That goes not only to Uberame FIDE, but it goes to the navigational warranty. That language, the conformity clause, is our first issue in the brief. You can affirm based solely on that. And you have to read the conformity clause not according to what a lawyer would think, but what the man on the street would think. I understood your argument about that to be an argument that the parties had contracted out of Uberame FIDE. And all Admiralty and Maritime law, all of it. All Admiralty and Maritime law. Any is any, Your Honor. Any term of this policy, which would include the navigational warranty. I don't understand how that language contracts out of Maritime law governing the navigational warranty. Because the navigational warranty is a term of the policy. It conflicts with Florida law because Florida law. The warranty is what it is. The question is, what's the legal consequence of a breach? And that is answered either by reference to Federal Admiralty law, which is strict, or Florida law, which is looser. Right. And it's answered according to Florida law, 627.409. I mean, but you're describing a case in which Federal law conflicts with Florida law. Not a case in which this contract conflicts with Florida law, which is what this clause is addressing. That clause addresses any term that conflicts with State law. What is the term? Point me to a term, a relevant term in this policy that conflicts with. That there's no coverage unless the boat is north of Cape Hatteras while afloat. That's the conflict right there. Because State law is not as harsh as Admiralty law. You're telling me that that is an illegal provision under Florida law? Without a conformity clause? If there's no conformity clause, Admiralty law applies. Okay, we all agree on that. But with the conformity law, you look in to see this Florida law conflict with Admiralty law. And if there's a conflict, you look at then State law controls. And that's what a man on the street would think. What if he wanted a policy that said State law applies? He would go to Geico Marine. They have a conformity to law clause. And you cannot erase that or ignore that. That has to be construed as part of the contract. Every clause must be given effect in the contract. So there's clearly no question but that in terms of the harsh consequence the court envisions for being afloat on June 1st, that 627.409 vitiates that and says we will only deny coverage if the risk was increased. As a result of the breach of the navigational warranty. And that's a matter of clear statutory law. With respect to Uberame Fidei, as your honors pointed out, there was no challenge to the findings of fact on knowledge. And with respect to the argument that no repairs were made, Geico Marine through Boat U.S. knew that the boat was in litigation. That it was going to be in litigation. And you can't make repairs until the experts complete their reports, which didn't happen until August of 2016. So can I just take you back to Florida law for a second? Yeah. So the statute says breach of warranty does not void coverage unless the breach increased a hazard by means within the control of the insured. Right. Why isn't that a sort of harmless error rule for breaches? And why isn't this breach not a harmless error? Because it turns out the ship was in southern waters during hurricane season. An iPad, an iPad fell on a float switch. And therefore the bilge pump. Well, that's an argument about the specific causal link to this particular harm to the ship. But the statute speaks in terms of increasing risk. It speaks in terms of increasing the hazard. Right. There was nothing about an iPad dropping that would have caused a different consequence if he was in Fort Lauderdale. No, but there was something about being in southern waters after June 1st that increases risk. I mean, that's not a hyper technical tick attack violation. That would be viewing the evidence completely contrary to how the district court saw it, that the loss had no causal relationship to where the boat was located. Anyone can drop an iPad. Yes, there was a storm, but a storm could hit Bradenton, too. And that's where this boat was. With respect to the application in their brief, they harp on the answers. I think it's clear that, and I think GEICO conceded in the lower court, there was less than stellar underwriting. The person taking the application never testified. The person, Patrick Schroeder, who testified as to reliance was not believed. And in the application, it says the boat was purchased for $25,000. And that's Exhibit 2, Defense Exhibit 2. And if you look at that, it says the boat was actually purchased on June 17th, 2013. All four of the boat policies have the same identical purchase price and date of purchase. So GEICO's underwriting was highly suspect and, Your Honor, should affirm based on a conformity clause. That takes care of admiralty law across the board. Thank you. Thank you. Yes, Your Honors. Let's go back to this notion that somehow, and I think, Your Honor, Judge Pryor, as you indicated, there was nothing here that was identified by Eppley's counsel to suggest any sort of waiver. And this notion that we're hearing today about how Mr. Shackelford intended to put it in dry dock, intended to comply with the warranty, but couldn't, I would highlight for the court and document this. What about the conformity, his argument that the conformity clause somehow impacts this issue? Absolutely, Your Honor. I just wanted to highlight that in the activity log, Mr. Shackelford called GEICO approximately 13 times. He could have called if he had a problem, and he would have been able to potentially modify the application, or excuse me, the policy. The conformity clause issue, I would submit, is completely inapposite to this case for a variety of reasons. I will start from this perspective. There is no incongruity between Florida and admiralty law on this specific issue. As Judge Katsas, you highlighted. For the reason I said. Exactly. Okay. There is no incongruity. And let's be clear about the facts here. The vessel was damaged in a storm in June in the summertime. It's almost capable of judicial notice that we have storms in South Florida in the summer. So the notion that there's somehow some sort of disconnect between the navigational warranty and the outcome is completely misplaced because the facts dictate otherwise. I also would point out, I made this argument earlier in my brief, that it is our position that the conformity clause issue really isn't even at play here. You're wrong about that. Yes, Your Honor. You're saying the cross-appeal argument. Yes, Your Honor. And the only reason I highlight that is, and I know it was briefed before. Here's the problem with that. Yes, Your Honor. We have parties all the time, they clutter us up with more briefs than we're supposed to have because they think this is required by cross-appeal. If you're filing the red brief, you're the appellee, you can make any argument in support of the judgment of the district court that the record supports. Yes, Your Honor. I understand. Our position was that it was an attempt to expand the issue, but we briefed it in full, as Your Honor saw fit. If they didn't make the argument in the district court, okay, and they forfeited it, that would be a different issue. Yes, Your Honor. I understand. But in this instance, there's no incongruity. The bottom line is that counsel has— I didn't understand their conformity clause argument to be directed to the navigational warranty at all. That's absolutely right, Your Honor. I understood it to be only about the other doctrine. That's correct, Your Honor. That's how I interpreted it as well. And so it's really an opposite, an opposite to this issue. But even so, even if the court were to examine the conformity clause in the statute, as Judge Katsas, you highlighted— There's no conflict. There is no conflict here. And so for all these reasons, I would, again, submit that both on the navigational warranty and on the Ubermeca Day doctrine, the court should reverse and remand with directions to enter judgment in favor of Geico Insurance in this matter. Thank you, Your Honor. Okay, I think we understand your case. We're going to take a 10-minute break, in which case one of my law clerks needs to get me something. We'll be right back. All rise. Okay. Tritchell, is that right? That's his.